Birdie Amsterdam, J.
This action in negligence was tried before the court without a jury. The plaintiff, who is 78 years of age, claims that she was injured on November 28, 1953 at about 7:00 or 7:30 in the evening while proceeding down the entrance steps leading from the public sidewalk to the courtyard of the premises owned by the defendant. Liability is predicated upon failure to furnish light and to provide a handrail.
The undisputed evidence discloses that, for a period of about 10 years prior to the date of accident, the plaintiff had been a tenant in said premises, conceded to be a multiple dwelling; that the steps and entranceway were located on the south side of the street and consisted of two ornamental doors or gates and two steps leading from the sidewalk to the courtyard. Above the gates was a decorative light fixture which was used only for display purposes on Christmas and New Tear’s. The right or westerly gate was usually locked in position and was so at the time of the accident, and the left or easterly gate was kept open or opened to permit passage. Entering from the public street, one would step down to the first step, then to ihe second step and then to the courtyard. The steps were constructed of brick and the courtyard was made of cement. A glass-enclosed vestibule and the front windows of the building faced upon the courtyard. The distance between the bottom step and the vestibule was approximately 8 feet. Some 20-odd feet to the right of the entranceway there was a street lamp.
*521 The evidence further shows that the said entranceway and steps were constructed in 1942 as approved by the Department of Housing and Buildings; and that the plaintiff had traversed them during her tenancy almost daily at varying times without any unusual incident or experience.
The plaintiff testified that immediately prior to the accident she was walking towards the entranceway with her grandchild in her arms; that her daughter preceded her carrying a baby chair or carriage and entered through the left gate; that the daughter’s sister-in-law followed her (the plaintiff).
The daughter testified that she (the daughter) descended the entrance steps to the courtyard, retraced her path ascending the steps to the sidewalk level, cautioned the plaintiff that it was dark and to be careful; took the child from the plaintiff and gave the plaintiff the carriage or chair in exchange; that her said course of conduct was engendered by fear that the shadows cast by the walls and adjacent shrubbery and the darkness in the areaway might be a source of danger to the plaintiff; that following the exchange she once more descended the entranceway steps (this time with the child in her arms), walked across the courtyard and stepped into the vestibule when she heard a noise and, upon turning around, saw the plaintiff lying on top of the chair or carriage in the courtyard near the wall of the vestibule.
The plaintiff further testified that she proceeded to descend on the left side of the steps when her daughter was about two steps below her; that plaintiff carried the carriage or chair in front of her body with her left hand; that she had nothing in her right hand; that nothing was wrong with her right hand; that she stepped off the first step and noticed that it was dark; that she could not see anything; that she wanted to proceed and “suddenly was falling”; that she was “groping with [her] right hand to hold onto something ” and missed her footing; that she fell from the second step to the vestibule entrance.
With constant usage of these steps during her 10-year residency, the plaintiff undoubtedly knew that in descending at the left side of the entrance steps there was nothing she could have held onto with her right hand, whereas she could have supported herself on the gate and the low brick wall on the left, as indicated by the photos in evidence. Notwithstanding this knowledge, notwithstanding the daughter’s warning of darkness, notwithstanding the darkness, notwithstanding that she could have supported herself with her left hand, she chose *522 to incumber her left hand with the chair or carriage, thus foreclosing any opportunity to avail herself of any assistance which might have been present. If the daughter’s testimony that she feared for her mother’s safety because the place was in darkness is to be credited, then common sense would have dictated setting the chair down or giving it to the woman who was with them. Absent a showing that they were faced with any immediate emergency or that the daughter was lacking in intelligence (the daughter impressed the court as a very intelligent woman), the only permissible inference to be drawn from the aforesaid acts is that the condition of the steps and entraneeway at that time afforded safe passage into the courtyard and into the building. The fact that the daughter was able to descend the steps, ascend them and descend them once again and pass across the courtyard into the vestibule fortifies the conclusion that the entrance-way and steps were safe and did not present any unusual or dangerous or hazardous condition.
The defendant’s housekeeper testified that there were lights in the vestibule and foyer. The plaintiff admitted there were lights in the foyer and that the street lamp was lit. The photos in evidence, taken at a time of the year when this accident occurred, demonstrate a sparsity of foliage and from the credible testimony and the probabilities of the evidence, I am persuaded to find that not only was light shed by the street lamp but also that the vestibule fight was on, furnishing fight to the area in question.
Additionally, the evidence established that the plaintiff at the time of her accident was suffering from an arthritic condition of the spine which at that time had caused her to walk in a somewhat forward stooped position. Ordinary prudence on her part would have dictated that she descend the steps in question without any encumbrance or contrivance in her hand. In choosing to act as she did, the conclusion is inescapable that she not only contributed to her fall but created the very condition which caused her to fall. A contrary finding would be wholly unwarranted. While the circumstance that this elderly woman was injured appeals to one’s sympathy, there is no sound reason why this defendant should be compelled to pay for her carelessness.
It has long been the rule in this State that the Multiple Dwelling Law does not require any fights over exterior steps which lead from the sidewalk (Flanagan v. Rosoff, 260 App. Div. 776; Spagat v. Regency Park, 263 App. Div. 619; Indinali v. Lerner, 243 App. Div. 735). There is no common-law duty to provide artificial illumination to light exterior steps of an *523 apartment house used in common where there is no defective condition or unusual hazard to be exposed or made manifest by the light (Hirschler v. Briarcliff Management Corp., 275 App. Div. 422, affd. 300 N. Y. 680).
An analysis of the evidence, oral and documentary, leads to the conclusion that the entranceway and exterior steps leading to the courtyard on the defendant’s premises do not present any defective condition or unusual hazard which had to be made visible. It cannot be said that the use of brick in the construction of steps is either unusual or creates any hazard or difficulty. This method of construction has been in existence for an extended period of time and a certificate of occupancy had been issued indicating the suitability of the material for the purpose. Plaintiff urges that by reason of the design of the brick it was difficult to distinguish the ends of the steps. Her argument, however, is unsubstantiated by the proof. She testified she was on the bottom step at the time of her fall. Inasmuch as the courtyard was made of cement, the design of the brick should have helped rather than hindered her in her descent from the bottom step to the courtyard by reason of the fact that the difference in design between the step and the courtyard should have clearly outlined for her the edge of the step. She testified also that it was so dark that it was necessary for her' to grope. If that was the situation, then the design of the step had nothing to do with her accident. If it was so dark that she could not see where she was going, then she could not have seen the design of the step. Too, her claim that certain shrubbery was so .situated as to cause shadows to be cast upon the steps, making it impossible for her to see anything, taxes credulity. The fair inference to be drawn from all of the surrounding physical circumstances is that there was light reflected upon the step and courtyard from the lights of the vestibule, lobby and street lamp.
The plaintiff contends that the defendant was negligent in failing to provide a handrail and in maintaining a defective condition in that the risers and treads of the entrance steps were not of uniform height. In support thereof, plaintiff relies upon section 52 of the Multiple Dwelling Law. The provision of said section requiring handrails on exterior steps is not applicable here for it was enacted subsequent to the construction of the steps in question and was not intended by the Legislature to be retroactive. Too, the provision relative to treads and risers, requiring uniformity of height, does not apply here for it has been construed to apply to interior and not exterior stairs (Hunter v. G. W. H. W. Realty Co., 247 App. Div. 385; *524 Indinali v. Lerner, supra; Freewald v. 1605 Nelson Ave., 236 App. Div. 643; Armstrong v. Rapp, 165 Misc. 583). This interpretation was confirmed when the amendment requiring bannisters and balustrades to both exterior and interior stairs was enacted. Said amendment, by its very language, is limited to subdivision 1 of the aforesaid section of the Multiple Dwelling Law. It cannot be read into subdivision 3. It is fair to assume that had the Legislature desired to amend the complete statute, it would have done so in unequivocal terms. The failure to do so leaves the remaining sections as they were prior to the amendment. Regarding the actual measurements themselves, there was no difference in the depth of the treads of the first and second steps, each being 18% inches, and the difference in height between the risers varied in one instance % of an inch and in another instance % of an inch. The three risers from the top down were respectively 6% inches, 7 inches and 7% inches. In any event, the said differences are too small, too slight to be deemed to constitute a dangerous or hazardous condition. In the case of Rambo v. Longmore (269 App. Div. 859, affd. 295 N. Y. 792) the appellate courts were presented with a factual situation wherein the defendant constructed a series of steps which had the following dimensions: on one step the tread was 11 inches deep and on the other it was 12 inches deep. The heights of the risers were, respectively, 7 inches, 8% inches, and 6 inches. The injured plaintiff had used the steps once or twice daily for 5 years prior to the accident. In determining the factual issue the courts held that the proof failed to establish actionable negligence in the construction. In the case at bar, the plaintiff had used the steps in question for a period of approximately 10 years in all seasons and under varying conditions of light before her accident. She was well acquainted with her surroundings, and the situation with which she was faced was one with which she was fully familiar. As in the cited case, the conclusion is warranted here as a matter of fact that there was no negligence in the construction. The plaintiff places reliance upon the case of Mulac v. Greentree Homes (256 App. Div. 1107). However, the factual patterns there and here are not analogous. There it was found as a fact that the defendant had been in the practice of providing illumination for the area in question until 1:00 a.m. The court concluded therefrom, that the jury might find, that a condition of peculiar danger which called for a special warning existed and that this was recognized by the defendant when he maintained a light at that point until 1:00 a.m; in the subject action there is no such factual situation. On the contrary, the plaintiff admits that the defend *525 ant did not provide any illumination over the steps in question and that the light fixture over the gates was lit only on Christmas and New Year’s.
In sum, based upon the credible evidence adduced and all the surrounding circumstances, as well as the fair and reasonable inferences, it is my considered opinion and I conclude that the defendant was not obligated to furnish a handrail along the entrance steps, or to supply any artificial illumination at the place where the plaintiff alleges she met with an accident. It is apparent that the absence of a handrail or the measurements of the risers were in no way causally connected with her fall. Her claim of shadows on the steps has been factually demonstrated to be insubstantial and the condition was neither dangerous nor unusual. It appears that because of her disregard for her own safety the accident she claims she sustained would have occurred independent of the presence or absence of lights or the presence or absence of shadows or the mode of construction of the steps or the height of the risers.
Since there is no adequate showing upon which a finding of negligence on the part of the defendant could be predicated, and the proof affirmatively established the contributory negligence of the plaintiff, it is unnecessary to consider the question of injuries.
Upon all the facts and in the light of all of the circumstances of the case, I find and hold that the defendant is entitled to judgment in his favor dismissing the plaintiff’s complaint on the merits, and the Clerk of the court is directed to enter judgment accordingly.